UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

V.

BRIAN W. BENDEROFF,

Defendant.

_____/

Case No. 20-cr-20380

Nancy G. Edmunds

United States District Judge

**MOTION TO QUASH SUBPOENA SERVED ON BRIAN HELMERSON**

## I.    INTRODUCTION

1.      On or about July 20, 2022, Brian Helmerson (hereinafter referred to as "HELMERSON") engaged in a telephone conversation with an individual who identified himself as Michael Bullota, Defense Counsel (hereinafter referred to as "DEFENSE") representing Brian W. BENDEROFF in the above-captioned matter. During this conversation, HELMERSON spoke at great length with DEFENSE and truthfully answered countless questions regarding the initial encounter of Brian W. BENDEROFF based off his memory of events which occurred approximately six (6) years prior. At no time during this conversation was HELMERSON aware of a third party listening quietly

1

and intently in the background. DEFENSE stated he wanted to avoid having to subpoena HELMERSON for an upcoming motion to suppress related to the above captioned prosecution and wished to have HELMERSON sign a declaration relating to the content of this conversation. HELMERSON agreed to the request.

2.      As this conversation continued and during additional conversations, HELMERSON frequently made statements indicating more questions were being raised as DEFENSE continued to question HELMERSON about the matter. HELMERSON advised DEFENSE that any declaration for HELMERSON's signature would require the frequent use of language similar to "to the best of my recollection."

3.   The last phone conversation between HELMERSON and DEFENSE occurred within approximately seven (7) days of the July 20, 2022, conversation. During this last conversation, DEFENSE stated to HELMERSON he would attempt to email a declaration to HELMERSON for review, modification, and signature that day but more than likely that Thursday. This conversation and agreement is further evident and memorialized in an email exchange between DEFENSE and HELMERSON dated July 26th and 27th, 2022. This email exchange is attached hereto as Exhibit A. DEFENSE never transmitted a declaration to HELMERSON.

4.      On August 8, 2022, DEFENSE sent an email to HELMERSON stating "Unfortunately, we were not able to get a declaration done in time." This email further states "I apologize but I will need you to come to Michigan for the September 13, 2022 evidentiary hearing…". This email is attached hereto as Exhibit B

5.      On this same date, August 8, 2022, DEFENSE submitted to this Court, a document titled "Defendant's Reply to the Government's Response to Motion to Suppress (ECF No. 138)". Attached to ECF No. 138 are approximately 21 attachments.

Included as Attachment A is the declaration of Jonathan KARMO (hereinafter referred to as "KARMO"). This declaration clearly states KARMO witnessed the extensive question and answer session of July 20, 2022, and that KARMO even took notes to this conversation. This declaration was signed by KARMO on July 29, 2022, and serves to reinforce HELMERSON's current belief that DEFENSE never intended to uphold the agreement referenced in paragraph 1 and has manipulated all communication between HELMERSON and DEFENSE. The KARMO declaration is attached hereto as Exhibit C.

6.      On or about, August 9, 2022, HELMERSON engaged Assistant United States Attorney Mark Chasteen and Homeland Security Investigations, Special Agent Daniel Bernthal (hereinafter collectively referred to as "GOVERNMENT") in a series of phone conversations and emails. Again, HELMERSON truthfully answered extensive questions regarding the matter before the Court in Brian W. BENDEROFF.

7.      On August 26, 2022, Stephen P. Helmerson, HELMERSON's father and Retired US Army Lieutenant Colonel, received a phone call at the family residence from DEFENSE.  As enumerated in the DECLARATION OF STEPHEN P. HELMERSON and attached hereto as Exhibit D, Mr. Helmerson was later physically served with a copy of the subpoena directing HELMERSON to appear before this Court on September 13, 2022, at 10:00 am. It should be noted the individual that made contact with Mr. Helmerson was dressed strikingly similar to a United States Postal Courier and handed Mr. Helmerson an official United States Postal Service Priority Mail Flat Rate Envelope which contained a letter on Bullota Law letterhead attached hereto as Exhibits E and F respectively. This deceptive practice utilized by DEFENSE's agent is dangerous and a misuse of United States Postal Service supplies. Tactics like this unjustly undermine the public's confidence in our public servants and should not be tolerated.

8.      On July 28, 2022, at approximately 9:00 pm HELMERSON was served with a subpoena commanding HELMERSON to appear at 231 W. Lafayette Blvd, Detroit, Michigan, on September 13, 2022, at 10:00 am in the matter of United States of America v. Brian W. BENDEROFF (Case No. 20-cr-20380) and is the genesis for this motion.

9.      On August 29, 2022, DEFENSE called HELMERSON on his private cell phone from a blocked number. During this conversation, HELMERSON advised DEFENSE he would be filing a Motion to Quash and advised DEFENSE of the undue burdens described here within this motion. DEFENSE told HELMERSON that he needs HELMERSON's testimony because HELMERSON is "the only one telling the truth." DEFENSE also stated GOVERNMENT has produced a report relating to the conversations described in paragraph 6. Furthermore, HELMERSON told DEFENSE that DEFENSE had created its own witness to these truthful statements in KARMO and that KARMO was readily available to testify. DEFENSE stated he was calling KARMO as a witness.

10.     On August 30, 2022, DEFENSE sent an email to HELMERSON in an apparent effort to pressure HELMERSON. In this email, DEFENSE states "…I would like to have my assistant book your flight while there are seats available and while the price is not unreasonably high." This email demonstrates that even DEFENSE acknowledges the high burden of this travel required to comply with the subpoena HELMERSON was served and is attached hereto as Exhibit G.

II.     **ARGUMENT**

A. <u>**The subpoena issued to HELMERSON in this instance requires a person to comply beyond the geographical limits specified in Rule 45(a)(c) as it relates to Place of Compliance.**</u>

In summation, the applicable portions of this rule states a subpoena may command a person to attend a trial, hearing, or deposition **only** if the location of the hearing is within 100 miles of where the person resides, is employed, or regularly transacts business in person or is a party or a party's officer or is commanded to attend a trial and would not incur substantial expense.

HELMERSON has been retired from the Department of Homeland Security and residing in Wilmington, North Carolina since 2019. Travel required to comply with this subpoena would require travel of approximately **one thousand three hundred miles** (1,300 miles) roundtrip far exceeding the 100 miles established in this rule. Further, examination of air travel and driving are unreasonable and burdensome. In short, this is no longer a simple day trip to the Courthouse to provide testimony and same day return home as intended by this rule. Air travel requires travel to the airport, parking, check in, an invasive personal inspection and x-ray by the Transportation and Security Administration, initial flight, a possible connecting flight, arrival in Detroit, getting a rental car, driving to a hotel and checking, travel to the Courthouse the following morning and locate parking before finally providing testimony. Then the reverse all before finally returning home. Furthermore, driving is untenable as HELMERSON currently owns a 2010 Dodge Ram with approximately 300,000 miles on the odometer. This vehicle fails to start intermittently and has other mechanical concerns and could pose a safety hazard for this distance on the highway. Roundtrip via either mode of transportation will require multiple days and expose HELMERSON to an undue burden.

Furthermore, HELMERSON is not a party or party's officer to these proceedings and does not reside in, is not employed in, and does not conduct business in person within the State of Michigan. Additionally, the hearing before the Court scheduled for September 13, 2022, is **not** a trial. It is a motion to suppress submitted by DEFENSE. Compliance with this subpoena would require a large time commitment and incur lost wages.

## B. Hearsay is admissible for the proceedings before the Court on September 13, 2022.

The Courts have consistently upheld and admitted hearsay statements at pretrial suppression hearings. As quoted from *United States v. Boyce*, 797 F.2d 691 (8th Cir. 1986):

"Moreover, the right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial. "[T]he interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980); *United States v. Matlock*, 415 U.S. 164, 172-74, 94 S.Ct. 988, 993-95, 39 L.Ed.2d 242 (1974). This difference in procedural protections is reflected in the Federal Rules of Evidence. Rule 104(a) states that the trial court, in making its determination of preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence, "is not bound by the rules of evidence except those with respect to privileges."

In an analogous context, the Supreme Court has declared that a defendant is not deprived of his Sixth Amendment right to confrontation at a pretrial hearing where the arresting officers testify as to what eye-witness informants told them about the defendant's activities. *McCray v. Illinois,* 386 U.S. 300, 312-13, 87 S.Ct. 1056, 1063-

64, 18 L.Ed.2d 62 (1967); *Cooper v. California,* 386 U.S. 58, 62 n. 2, 87 S.Ct. 788, 791 n. 2, 17 L.Ed.2d 730 (1967). *See United States v. Diaz,* 685 F.2d 252, 255 (8th Cir. 1982); *United States v. Merritt,* 695 F.2d 1263, 1269-70 (10th Cir. 1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed.2d 286 (1983). We see no principled basis on which to distinguish cases involving the hearsay statements of informants from those involving the hearsay statements of an arresting officer.

Accordingly, the trial court may accept hearsay evidence at a suppression hearing if the court is satisfied that the statements were made and that there is nothing to raise serious doubt about their truthfulness. *Matlock,* 415 U.S. at 175-77, 94 S.Ct. at 995-96. In this case, there is little reason to doubt that Reynolds made the statements to which Eaton testified at the suppression hearing. Eaton was assigned to Boyce's case in conjunction with a special project between the St. Louis Police Department and the Bureau of Alcohol, Tobacco, and Firearms concerning firearms violations, and thus was very familiar with the facts. Many of the statements are memorialized in Reynolds's police report, which was readily available to Eaton. Eaton testified that the remaining statements derived from a conversation between him and Reynolds. Boyce has not shown anything that would cast doubt upon Eaton's credibility, which was bolstered by Eaton's having filed a written report about his interview with Reynolds. We note further that Boyce took full advantage of his right to cross-examine Eaton at the suppression hearing. Suppression Hearing Transcript at 10 to 25 26 to 28. *See United States v. Green,* 670 F.2d 1148, 1154 (D.C. Cir. 1981). In addition, Boyce had the opportunity to confront and to cross-examine Reynolds at trial. We conclude that Reynolds's absence from the suppression hearing did not violate Boyce's right to confront and cross-examine the witnesses against him."

Aside from the overall encompassing decision in this case affirming the use of hearsay statements in pretrial hearings, three additional points are worthy of drawing attention. (1) Satisfaction the statements were made: This is not being contested. (2)

That there is nothing to raise serious doubt about their truthfulness: This is also not being contested. To wit, DEFENSE's statement to HELMERSON's truthfulness as described in paragraph 9. (3) Statements memorialized: This is also not in doubt. KARMO's very own declaration states he took notes presumably which he used to prepare his declaration. HELMERSON is also aware GOVERNMENT has prepared a report memorializing his statements referenced in paragraph 6.

### C. Alternatives are readily available that do not require the testimony of HELMERSON

Most importantly, as a result of DEFENSE's own deception in his dealings with HELMERSON, DEFENSE has created his very own witness in KARMO. To reiterate, KARMO's declaration states he was present for the extensive and admittedly truthful question and answer session between DEFENSE and HELMERSON which is at the heart of this subpoena. KARMO's declaration goes so far to state "I took notes during the conversation...". As such, HELMERSON's testimony is not required for the hearing scheduled before the Court on September 13, 2022. Alternatives are readily available to both DEFENSE and the GOVERNMENT. These alternatives are witnesses that are employed within the Eastern District of Michigan and can easily provide relevant testimony while alleviating the undue burden imposed by this subpoena.

### D. This subpoena creates additional undue burdens on HELMERSON

As a result of the recent economic challenges and subsequent increase in costs of goods, food, and fuel, HELMERSON has returned to the workforce and is working two jobs. One of these jobs HELMERSON started on August 17, 2022. As such, he is still in training and any absence could be detrimental to his employment and career development. Furthermore, HELMERSON is a single person caring for two large size dogs. These dogs currently require twice daily medication, preparation of special food, cleaning their paws as they return from outside and chemically treating areas of

excrement to treat a gastrointestinal issue and nausea accompanied with diarrhea and vomiting. Boarding facilities will not accept sick dogs for fear it will spread to the other animals and finding adequate at home care will be expensive and unlikely to provide the level of care required.

## III.    SUMMATION

It has been established and overwhelmingly reaffirmed; the Courts may rely on hearsay evidence at pretrial motions. Also clearly established has been DEFENSE's own creation of a perfectly suitable witness that can provide the testimony to HELMERSON's truthful statements. The GOVERNMENT has also had access to HELMERSON and been supplied with truthful statements to which the GOVERNMENT has a witness. Both parties to this matter before the COURT are more than adequately able to represent their respective positions and arguments to meet their needs for the September 13, 2022, proceedings. Furthermore, it has been clearly established that requiring HELMERSON to travel almost 1,300 miles and causing him an extended absence from his employment and other responsibilities will create an undue burden. Finally, due to the fact HELMERSON has had to respond to the DEFENSE's subpoena and deceptive tactics, HELMERSON has incurred a loss of wages and expenses in the amount of $850 USD. It is request, that If the Court finds in favor of this motion to quash, the defendant and/or DEFENSE be ordered to pay this amount to HELMERSON as permitted in Rule 45 and payment to be made within 30 days of such order.

For these reasons, HELMERSON respectfully requests that the Court enter an order quashing the subpoena and awarding HELMERSON $850 USD in lost wages and incurred expenses.

Respectfully submitted,

Brian Helmerson (Pro Se)
213 Inlet Point Dr
Wilmington, NC 28409
Tel: (910) 399-8146
E-mail: bhelmerson@live.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon the below counsel of record to their respective email and/or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September ___1st___, 2022.


R. Michael Bullota
Defense Counsel

Mark Chasteen
Assistant United States Attorney


Respectfully submitted,

Brian Helmerson (Pro Se)
213 Inlet Point Dr
Wilmington, NC 28409
Tel: (910) 399-8146
E-mail: bhelmerson@live.com

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                                               Case No. 20-cr-20380

                Plaintiff,

                                               Nancy G. Edmunds

V.                                               United States District Judge


BRIAN W. BENDEROFF,


                Defendant.

_____/


### Index of Exhibits

**Exhibit A:** Email from Defense Attorney Michael Bullota dated July 27, 2022

**Exhibit B:** Email from Defense Attorney Michael Bullota dated August 8, 2022

**Exhibit C:** Declaration of Jonathan Karmo

**Exhibit D:** Declaration of Stephen P. Helmerson

**Exhibit E:** Photograph of United States Postal Service Priority Mail Flat Rate Envelope

**Exhibit F:** Letter from Defense Attorney Michael Bullota on Bullota Law letterhead

**Exhibit G:** Email from Defense Attorney Michael Bullota dated August 30, 2022

Re: Follow up



R. Michael Bullotta <michael@bullottalaw.com>
Wed 7/27/2022 7:52 AM

To: Brian Helmerson <bhelmerson@live.com>

Brian,

No problem at all, that happens to me as well.   I think I have a pretty good idea what
happened on 6/23/16 from your vantage point, so I will draft a declaration for your review
and for your changes.  What I will draft will be what I understood you to be saying based
on our conversations, but you should absolutely change and add anything you think will
make the declaration more accurate.

I plan to send you the draft later today.

Many thanks,
Michael



**R. Michael Bullotta**
Attorney and Counselor at Law
Bullotta Law PLLC

✉  michael@bullottalaw.com
☎  Office: (313) 400-5776
⊙  Ford Building 615 Griswold St., Suite 1620 Detroit, MI 48226
🔗  **bullottalaw.com**

WARNING AND CONFIDENTIALITY STATEMENT: This email (including any attachments) is protected by the Electronic
Communications Privacy Act (ECPA) in Title 18, United States Code, Sections 2511, 2515 and 2520, and is confidential and
privileged. This email is solely for the use of the addressee(s) named above. Receipt by anyone other than the addressee(s) is NOT a
waiver of the attorney-client privilege. Violations of the ECPA are subject to criminal penalties of up to five years imprisonment under
Section 2511 for each violation and the payment of civil damages according to Section 2520. Please destroy this e-mail if you are not
the intended recipient. Any disclosure, copying or distribution of this email or its attachments by unintended recipients is strictly
prohibited by federal law. Law Offices of R. Michael Bullotta

---

From: Brian Helmerson <bhelmerson@live.com>
Sent: Tuesday, July 26, 2022 8:38 PM
To: R. Michael Bullotta <michael@bullottalaw.com>
Subject: Follow up

Hey Michael,

Sorry for the delay. I had moved your original email from my junk mail into my inbox and thought any
additional would follow...apparently I was wrong. The photograph you sent that we have described as
the "hard interview room" is the location I had initial contact with Brian Benderoff to the best of my
recollection.

Case 2:22-mc-51404-NGE-DRG    ECF No. 1    PageID.14    Filed 09/01/22    Page 14 of 27



**Benderoff matter**

R. Michael Bullotta <michael@bullottalaw.com>
Mon 8/8/2022 3:23 PM

To: Brian Helmerson <bhelmerson@live.com>

Hi Brian,

I just left a message on your dad's answering machine.  I wanted you to know that I am filing the Reply on the Suppression Motion today.  Unfortunately, we were not able to get a declaration done in time.  In the Reply, I refer to our conversation and your view of the events involving Mr. Benderoff on June 23, 2016.   I apologize but I will need you to come to Michigan for the September 13, 2022 evidentiary hearing, unless the government decides to do the right thing and concede the issue.  Of course, we will pay for your flight and accommodations.

Please call me when you have a chance so I can make travel arrangements for you.

Many thanks,
Michael



**R. Michael Bullotta**
Attorney and Counselor at Law
Bullotta Law PLLC

✉ michael@bullottalaw.com
☎ Office: (313) 400-5776
⌖ Ford Building 615 Griswold St., Suite 1620 Detroit, MI 48226
🔗 bullottalaw.com

WARNING AND CONFIDENTIALITY STATEMENT: This email (including any attachments) is protected by the Electronic Communications Privacy Act (ECPA) in Title 18, United States Code, Sections 2511, 2515 and 2520, and is confidential and privileged. This email is solely for the use of the addressee(s) named above. Receipt by anyone other than the addressee(s) is NOT a waiver of the attorney-client privilege. Violations of the ECPA are subject to criminal penalties of up to five years imprisonment under Section 2511 for each violation and the payment of civil damages according to Section 2520. Please destroy this e-mail if you are not the intended recipient. Any disclosure, copying or distribution of this email or its attachments by unintended recipients is strictly prohibited by federal law. Law Offices of R. Michael Bullotta



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA

                          CASE NO. 20-CR-20380

vs.                      HON. NANCY G. EDMUNDS

BRIAN BENDEROFF,

       Defendant.

_____/

## DECLARATION OF JONATHAN KARMO

I, JONATHAN KARMO, hereby declare:

1. I am an attorney licensed to practice law in Michigan and a partner at the law firm of Howard and Howard, where I have worked since 2016. Prior to that, I held two judicial clerkships for federal district court judges in the Eastern District of Michigan between 2012 and 2016.

2. On July 20, 2022, I listened live and in real time to a speakerphone conversation between attorney R. Michael Bullotta and former Homeland Security Investigations Special Agent Brian Helmerson ("Agent Helmerson").

3. Mr. Bullotta had reached out to Agent Helmerson to see what he recalled

1

about the detention of Brian Benderoff by Homeland Security agents on June 23, 2016. In an effort to reach Agent Helmerson, Mr. Bullotta had left a message with Agent Helmerson's father in North Carolina earlier that day. The call that I listened to was Agent Helmerson's return call to Mr. Bullotta.

4. I took notes during the conversation, and this declaration is intended to summarize the pertinent statements made by Agent Helmerson in his conversation with Mr. Bullotta on July 20, 2022.

5. Agent Helmerson said that he did a significant portion of the communicating with Mr. Benderoff while he was at the HSI building, though Agent Michael Williams was the lead agent that day. Agent Helmerson said he was not with Mr. Benderoff the entire time.

6. Almost immediately, Agent Helmerson stated that he first encountered Brian Benderoff on June 23, 2016 while Mr. Benderoff was in a locked jail cell in the HSI Building near the Detroit Metropolitan Airport. Agent Helmerson said "I can tell you 100%" that he first encountered Brian Benderoff in a jail cell "in our back lockup."

7. In describing Mr. Benderoff's demeanor, Agent Helmerson said he could tell that Mr. Benderoff was "struggling with anxiety" and was "extremely uncomfortable." Agent Helmerson said that he felt the need to move Mr.

2

Benderoff out of the cell in an effort to have him "calm down some." Agent Helmerson said that he took Mr. Benderoff from the freezing cold cell to an interview room with a window.

8. When Mr. Bullotta asked Agent Helmerson if he would describe Mr. Benderoff's demeanor as "jovial" or happy, he responded with a question, asking, "How can I say he was jovial when just a second ago I told you he was anxious and nervous?" Agent Helmerson reiterated that Mr. Benderoff was so anxious that he felt he needed to move him out of the locked cell to another location.

9. Agent Helmerson further described Mr. Benderoff's demeanor that day as "antsy as can be," adding that Mr. Benderoff "was so uncomfortable I could probably guarantee his skin was on fire." When asked if Mr. Benderoff was "freaking out," Agent Helmerson answered, "I know he was."

10. Agent Helmerson said that he may have seen Mr. Benderoff's anti-anxiety medication, and said that he knew Mr. Benderoff had anxiety issues.

11. Mr. Bullotta mentioned that Sheldon Gonte wrote a declaration stating that Mr. Benderoff seemed jovial and happy at the HSI building. Agent Helmerson disagreed completely with that characterization. Agent Helmerson said he did not see Sheldon Gonte that day and said that he does not think Sheldon Gonte was ever

3

at the HSI building for him to see Benderoff.  Agent Helmerson indicated that his

investigation revealed that Sheldon Gonte hates Brian Benderoff.

12.  Agent Helmerson said that one of the interviews he conducted of Mr.

Benderoff that day occurred in what he referred to as a "lockup room for

interviews" that contained an aluminum desk and aluminum chairs.  Agent

Helmerson said the temperature where Mr. Benderoff was kept was "freezing

f***ing cold."

13.  Agent Helmerson said, while he was not with Mr. Benderoff the entire time

he was as the facility, he knows that Mr. Benderoff was taken to different places

within the HSI building.  He stated that each place Mr. Benderoff was taken was

locked and that Mr. Benderoff "was not about to be able to run away," as a key

card was required to exit the HSI building.

14.  Mr. Bullotta read Agent Helmerson a portion of his report from that day

wherein Agent Helmerson wrote that Mr. Benderoff asked on several occasions if

he would be allowed to leave if he provided truthful information.  Agent

Helmerson confirmed Mr. Bullotta's understanding of the report that Mr.

Benderoff was not free to leave the HSI offices until allowed to do so by agents.

15.  When specifically asked by Mr. Bullotta if Mr. Benderoff was free to go

prior to the agents letting him leave, Agent Helmerson said that Mr. Benderoff was not free to go. Agent Helmerson stated that any reasonable person in Mr. Benderoff's situation would have believed that they were not free to go. Agent Helmerson stated that Mr. Benderoff was "in a jail room" in a "semi-hidden facility."

16. Agent Helmerson said that he knew that Mr. Benderoff wanted to leave because he had asked several times to be allowed to go home.

17. Agent Helmerson said that he made a deal with Mr. Benderoff that he would let Mr. Benderoff leave if Mr. Benderoff provided certain information to him. Agent Helmerson stated words to the effect of, "once he provided his end of the agreement, we provided ours."

18. Agent Helmerson said that the events of June 23, 2016 involving Mr. Benderoff "turned into way too long of a thing."

19. Towards the end of the interview, Agent Helmerson questioned his memory of whether he first interviewed Mr. Benderoff in one of the smaller cells contained within the back lockup area or in the slightly larger back lockup area itself. It should be noted that Agent Helmerson used the terms "cell," "jail cell" and "lock-up room for interviews" interchangeably. He pointed out that it had

been a long time since the events occurred and said he might remember better if he could see photographs of the back lockup area and cells.

20.   Agent Helmerson made other statements during the conversation about the investigation of the case.  He was critical of government counsel for not allowing Mr. Benderoff to wear a wire to record conversations with Owner A, which Mr. Benderoff was willing to do.  He said that government counsel gave as the reason for not wiring up Mr. Benderoff that doing so could result in exculpatory statements.  Agent Helmerson disagreed with this and said that Owner A "should be in prison."  Agent Helmerson was also critical of government counsel for not using a taint team when agents were going through attorney-client privileged materials.

I declare, under the penalty of perjury, that the foregoing is true and correct to the best of my memory.

_Jonathan Karmo_
JONATHAN KARMO

July 29, 2022
Date



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                                           Case No. 20-cr-20380

                 Plaintiff,

                                           Nancy G. Edmunds

V.                                            United States District Judge


BRIAN W. BENDEROFF,


                 Defendant.

_____/


## DECLARATION OF STEPHEN P. HELMERSON

I, STEPHEN P. HELMERSON, herby declare:

1.      I am a retired United States Army Lieutenant Colonel having honorably served on active duty for 21 years, most notably in the 1st Cavalry Division, 101st Airborne Division (Air Assault), 6th Infantry Division and two tours in the Pentagon. The highest award I received was the Legion of Merit during my career.

2.      On August 26, 2022, I received a phone call on my residential line from Michael Bullota. Mr Bullota made several inquires to the location of my son, Brian Helmerson. During the conversation, Mr. Bullota stated he had made five (5) attempts to serve my son with a subpoena. I was in disbelief and advised Mr. Bullota that we had been at the residence and no one had arrived looking for my son. Mr. Bullota asked where my son

was residing to which I advised I did not feel comfortable providing that information without my son's permission first. Mr. Bullota then made assertions that I was attempting to hide my son and badgering me. During the conversation, it appeared to me that another individual was with Mr. Bullota but did not address me during the phone conversation.

3.      On this same date, approximately one hour after the aforementioned phone conversation, a black male dressed in grey clothing knocked on the front door to my residence. The grey clothing gave me the impression he was a United States Postal Employee. I answered the door and this individual handed me a blue, white and red unsealed United States Priority Mail Flat Rate Envelope which I accepted and thanked him. I was able to see the documents inside were for my son. At this time I sent my son a text message letting him know we had been served.

I declare, under the penalty of perjury, that the foregoing is true and correct to the best of my memory.

_Stephen P. Helmerson_                    _August 30, 2022_

STEPHEN P. HELMERSON                    Date



**UNITED STATES POSTAL SERVICE** ® | **PRIORITY MAIL** ®

FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**TRACKED ■ INSURED**



PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

**VISIT US AT USPS.COM** ®
ORDER FREE SUPPLIES ONLINE

For Domestic shipments, the maximum weight is 20 lbs. For international shipments, the maximum weight is 20 lbs.

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL





R. Michael Bullotta
615 Griswold St., Ste.1620
Detroit, Michigan 48226
michael@bullottalaw.com
Phone:(313)771-9091
www.bullottalaw.com



August 10, 2021

*Via Hand Delivery*

Brian Helmerson
213 Inlet Point Dr.
Wilmington, NC 28409

Re: Federal Subpoena in U.S. v. Benderoff, Case No. 20-cr-20380

Dear Mr. Helmerson,

You are a subpoenaed witness in the above-captioned case who is required to appear on September 13, 2022 at 10:00 a.m. in the courtroom of the Honorable Nancy G. Edmunds, United States District Judge, located at 231 W. Lafayette, Detroit, Michigan.

In addition to your witness fee that has been provided with the subpoena, you are entitled to reimbursement of your flight, ground transportation and lodging costs, as well as reasonable incidental expenses.  If you would like, you can contact me and I will have my assistant book your flight and hotel.  You may also specify where you would like to stay and your request will be accommodated if possible.

Please email me or call with any questions.

Michael

Kind regards,

/s/ R. Michael Bullotta

R. MICHAEL BULLOTTA


RMB/cbb

## Airfare and Hotel



R. Michael Bullotta <michael@bullottalaw.com>
Tue 8/30/2022 4:13 PM
To: Brian Helmerson <bhelmerson@live.com>
Cc: Jonathan F. Karmo (Work) <jfk@h2law.com>

Brian,

While I understand that your stated plan is to file an *pro se* motion to quash the federal subpoena, I would like to have my assistant book your flight while there are still seats available and while the price is not unreasonably high. Would you be amenable to doing so?

Again, my number is (586) 533-0714.

Thanks,
Michael


**R. Michael Bullotta**
Attorney and Counselor at Law
Bullotta Law PLLC

michael@bullottalaw.com
Office: (313) 400-5776
Ford Building 615 Griswold St., Suite 1620 Detroit, MI 48226
**bullottalaw.com**

WARNING AND CONFIDENTIALITY STATEMENT: This email (including any attachments) is protected by the Electronic Communications Privacy Act (ECPA) in Title 18, United States Code, Sections 2511, 2515 and 2520, and is confidential and privileged. This email is solely for the use of the addressee(s) named above. Receipt by anyone other than the addressee(s) is NOT a waiver of the attorney-client privilege. Violations of the ECPA are subject to criminal penalties of up to five years imprisonment under Section 2511 for each violation and the payment of civil damages according to Section 2520. Please destroy this e-mail if you are not the intended recipient. Any disclosure, copying or distribution of this email or its attachments by unintended recipients is strictly prohibited by federal law. Law Offices of R. Michael Bullotta

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                        Case No. 20-cr-20380

                 Plaintiff,

                                        Nancy G. Edmunds

V.                                         United States District Judge

BRIAN W. BENDEROFF,

                     Defendant.

_____/

## ORDER QUASHING DEFENSE SUBPOENA OF BRIAN HELMERSON

       The matter is before the Court on Brian Helmerson's motion to quash defense subpoena served on Brian Helmerson. The Court has reviewed the motion and finds the subpoena does create an undue burden on Brian Helmerson and alternatives to his testimony are readily available for both parties involved in this matter.

THERFORE, the Court quashes the subpoena of Brian Helmerson, releasing him of any obligations thereof. Having done so, the Court also orders the defendant and/or Defense Counsel Michael Bullota to pay Brian Helmerson his reasonable expenses and any attorney's fees in the amount of $850 USD which shall be paid in fulll within thirty (30) days of this order.

SO ORDERD.

_____
Nancy F. Edmunds
United States District Judge

Dated: September   ,2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on September   ,2022, by electronic and/or ordinary mail.

_____
Lisa Bartlett
Case Manager